UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-00176-R

MICHAEL RADFORD,
Administrator of the Estate of
PAULA YVONNE RADFORD JOHNSON                                            PLAINTIFF

v.

DVA RENAL HEALTHCARE, INC.
d/b/a CHRISTIAN COUNTY DIALYSIS                                          DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant's Motion to for Partial Summary Judgment (DN 48). Plaintiff has responded (DN 54) and Defendant has replied (DN 56). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

This case involves the death of Paula Yvonne Radford Johnson ("Johnson") following a hemodialytic treatment at a medical facility in Christian County owned and operated by DVA Renal Healthcare, Inc. ("DVA"). Plaintiff Michael Radford ("Plaintiff"), as Administrator of Johnson's estate and her father, brought this action in the Western District of Kentucky on the basis of diversity. DVA now moves for Partial Summary Judgment, claiming that they are entitled to judgment as a matter of law with regard to the wrongful death action as provided for in KRS 411.130 as well as any loss of consortium claim that may serve as the basis for Plaintiff's claims for damages.

The undisputed facts are as follows. At the time of her death, Johnson was 48 years old and had been trained professionally as nurse. However, since the Social Security Administration

had adjudged her fully disabled in 1992, Johnson had worked neither full nor part-time, instead living with and caring for her elderly parents. Johnson's parents did not pay her a salary for this; instead she was supplied with room and board in exchange for her labor. As such, the only actual income that Johnson had from 1992 until her death was her monthly Social Security disability payments.

Johnson had been diagnosed with end-stage renal disease and thus needed tri-weekly dialysis to treat her blood. As a result of this diagnosis, Johnson had undergone vascular surgery to create an arteriovenous fistula (AV fistula), which served as an access site on her arm to facilitate her regular hemodialysis. Her dialysis treatment involved inserting two needles, one into the arterial and the other into the venous side of Johnson's AV fistula, whereupon Johnson's blood could circulate through the dialysis equipment and then back into her body.

On October 22, 2007, Johnson had a regularly scheduled hemodialysis treatment at DVA's facility in Christian County, Kentucky. Plaintiff alleges that DVA's staff at the Christian County clinic incorrectly connected the needles of the dialysis equipment to the AV fistula site. As a result, Johnson suffered a massive hemorrhage in her arm, chest, and back that caused her to go into cardiac arrest, and ultimately to die on the following day.

Plaintiff asserts a variety of damages claims on behalf of Johnson's estate, including all compensatory damages from the wrongful death of Johnson. As the basis for valuing the statutory wrongful death claim, Plaintiff states that Johnson's lost income and destruction of earning capacity amount to $703,824, calculating that figure as follows: (1) since Johnson was provided with housing, food, and other essentials in exchange for the care she gave her parents, such an exchange should be valued at $25,000 a year, amounting to $450,000 if extrapolated out until Johnson's sixty-fifth birthday; (2) Johnson's monthly Social Security disability payments of

$661 carried out until her seventy-ninth birthday (Johnson's natural life expectancy) would entitle Plaintiff to $252,824. DN 30 at 13. DVA maintains that Kentucky law bars Plaintiff from collecting either of these amounts under the wrongful death statute. DVA further argues that whatever amount Plaintiff is seeking to recover from a claim of loss of consortium with Johnson is barred by law.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

3

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

**I. Plaintiff's Wrongful Death Claim under KRS 411.130**

Where jurisdiction is exercised on diversity of parties, the substantive law of Kentucky governs the dispute. *See Rutherford v. Columbia Gas*, 575 F.3d 616, 623 (6th Cir. 2009). In Kentucky, wrongful death actions are controlled by statute. It provides:

> Whenever the death of a person results from an injury by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it. If the act was willful or the negligence gross, punitive damages may be recovered. The action shall be prosecuted by the personal representative of the deceased.

KRS § 411.130(1). Kentucky courts have held "[t]he measure of damages for a wrongful death in this jurisdiction is the value of the destruction of the power of the decedent to earn money." *Adams v. Davis*, 578 S.W.2d 899, 902 (Ky. Ct. App. 1979); *see Birkenshaw v. Union Light, Heat & Power Co.*, 889 S.W.2d 804, 806 (Ky. 1994).

DVA argues that Plaintiff's damages claim under KRS 411.130 is unfounded for two reasons. First, DVA alleges that in *Luttrell v. Wood*, the Supreme Court of Kentucky barred those seeking redress under KRS 411.130 from being compensated for "the ordinary and necessary services that come with day-to-day family life." *Luttrell v. Wood*, 902 S.W.2d 817, 819 (Ky. 1995). Second, DVA states that given Johnson's grave medical condition and her fifteen years on disability, there is no evidence that she possessed the power to earn money.

4

Finally, while not asserted by DVA in this motion, a recent decision by the Kentucky Court of Appeals holds that disability benefits cannot be considered as compensatory damages under Kentucky's wrongful death statute. *See Aull v. Houston*, No. 2008-CA-1238, 2010 WL 1814839, at *4-5 (Ky. Ct. App. May 7, 2010). This Court examines each of these arguments in turn.

### A. *Luttrell v. Wood* does not bar Plaintiff's Recovery.

DVA initially alleges that Plaintiff is seeking compensation for the day-to-day household services that Johnson provided before her death to Plaintiff. As evidence for this assertion, DVA points to Plaintiff's answer to a written interrogatory, which reads:

> INTERROGATORY NO. 20: If you are making a claim for loss of income or impairment or destruction of earnings capability, please state:
> ...
> b.) the method of computation of your lost income and/or impairment or destruction of earning capacity.
>
> ANSWER: Ms. Johnson cared for her elder parents. As compensation for her care, they supplied her home, food, and other essentials for her day to day living with an essential value of $25,000 per year. Ms. Johnson also received $661.00 per month in Social Security benefits.

DN. 30 at 13. DVA claims that this answer, in conjunction with the Kentucky Supreme Court decision of *Luttrell v. Wood*, bars Plaintiff from recovery. However, a closer look reveals that the decision is inapplicable to the current matter.[1]

---

[1] In *Luttrell*, following the death of his wife, the plaintiff received $9,000 from his insurance company for basic reparation benefits as survivors-replacement-services-loss benefits, pursuant to KRS 304.39-020(5)(e). *Luttrell*, 902 S.W.2d at 818. As the basis for those payments, the plaintiff stated that the $9000 payment was to offset the expenses he incurred for current and future child care costs due to his wife's death. *Id.* In a later wrongful death action, the defendant appealed the lower court's decision denying a motion to reduce the judgment won by the plaintiff by the $9,000 he had previously received. *Id.* at 819. The Kentucky Supreme Court found that the previous payment should not offset the wrongful death award, because the day-to-day services provided by the plaintiff's wife were not economic services producing income. *Id.*

5

The court in *Luttrell* held that "ordinary and necessary services that come with day-to-day family life" are not services producing economic benefit, and therefore the value of those services is not recoverable under KRS 411.130. *Luttrell*, 902 S.W.2d at 819. However, a careful reading of interrogatory twenty reveals that Plaintiff is not seeking compensation for Johnson's daily care-taking activities, but simply attempting to calculate the impairment and destruction of Johnson's capability to earn money. In answering the question, Plaintiff merely calculates, albeit very roughly, the value of the exchange of services between Johnson and Plaintiff. To loosely reword Plaintiff's answer, "The value of room, board, and other essentials provided to Johnson was $25,000, which she received as payment for the daily care she provided Plaintiff." As a result, the circumstances before this Court and the facts before the court in *Luttrell* are the opposites of one another. In *Luttrell*, all parties agreed that the statutory beneficiary under KRS 411.130 had been compensated for daily, household activities performed by the decedent. *Id.* at 818. Here, Plaintiff is not seeking compensation for the lost benefit of having Johnson work in his house, but instead attempting to articulate the basis for the destruction of Johnson's earnings claims.

As such, the *Luttrell* decision does not bar Plaintiff's claim under KRS 411.130.

### B. Plaintiff's Damages Claim under KRS 411.130 is supported by Sufficient Evidence.

DVA next argues that there is no demonstrative evidence before this Court that would allow a reasonable jury to believe that Johnson actually possessed the power to earn money. In support of this assertion, DVA analogizes the facts surrounding this case to two previous

---

As such, the services were not compensable under the measure of damages for wrongful death, and thus the two monetary awards were not duplicative. *Id.*

decisions, *Smith v. McCurdy* and *Turfway Park Racing Ass'n v. Griffen*. DN 56 at 2.

As both cases are factually distinctive from the current matter, DVA's argument is unpersuasive. In *Smith*, the Kentucky Court of Appeals examined whether an eighty-two-year-old woman with a variety of health concerns had the power to earn money within the meaning of KRS 411.130(1). *Smith v. McCurdy*, 269 S.W.3d 876, 882 (Ky. Ct. App. 2008). As neither party denied that the elderly woman was incapable of earning any money as a result of her advanced age, health problems, and morbid obesity, the trial court's determination to deny damages under the wrongful death statute was appropriate. *Smith*, 269 S.W.3d at 882. Here, Johnson was admittedly in poor health and without work experience for 15 years; however, Plaintiff has averred that Johnson was capable of daily housework and caring for her parents, services that should be roughly valued at $25,000. The factual dispute between DVA and Plaintiff concerning what Johnson was physically capable of doing and what value to put on the services she provided is enough to demonstrate that summary judgment is inappropriate. The circumstances surrounding *Griffin* have even less in common with Plaintiff's case. In *Griffin*, the Kentucky Supreme Court decided that the jury's failure to award any damages for the destruction of an infant's power to earn money was reversible error and only would have been appropriate if it could have been shown the infant was stricken with "a disability so profound as to render [the infant] incapable of earning money upon reaching adulthood." *Turfway Park Racing Ass'n v. Griffin,* 834 S.W.2d 667, 671 (Ky. 1992). As Johnson was a grown woman, professionally trained, and capable of at least some physical activity, it is clear that these cases are not analogous.

Moreover, the decisions of *Smith* and *Griffin* are legally distinctive from the decision before this Court. Both cases stand for the proposition that juries may decline to award damages

under KRS 411.130 where a reasonable jury could believe that the decedent possessed no power to earn money. *See id.* at 671; *Smith*, 269 S.W.3d at 882. However, this Court examines the issue of whether Johnson was capable of earning money in the context of a summary judgment motion. That DVA disagrees with the amount that Plaintiff claims under KRS 411.130 is demonstrative that there is a question of material fact as to the amount of damages. In examining a dispute over damages, Kentucky has long held that questions raised concerning damages are essentially questions of fact. *Tenn. Gas Transmission Co. v. Teater,* 252 S.W.2d 674, 676 (Ky. 1952). Thus, such a decision is best left in the sound discretion of the jury.

For these reasons, the damages claim under KRS 411.130 is appropriate.

### C. Johnson's Future Disability Social Security Payments are not Recoverable under KRS 411.130.

Finally, while DVA and Plaintiff do not discuss whether Johnson's Social Security disability payments may be used as a basis for determining her ability to earn money, a recent decision by the Kentucky Court of Appeals appears to have addressed just that proposition. In *Aull v. Houston*, the estate of five-year-old Blake Aull ("Blake"), suffering from a rare terminal disease,[2] brought suit for the negligent medical treatment that caused his death. *Aull*, 2010 WL 1814839, at *1. Though all parties in *Aull* agreed that Blake's chances for long-term survival were very poor, his estate still brought a claim for loss of his power to earn money in the future. *Id.* at 1. The estate argued that even though Blake would never have reached the age of majority to earn money, his future claims for Social Security disability were equivalent to earning a wage, and therefore should be used to calculate his wrongful death claim under KRS 411.130. *Id.* at

---

[2] Blake suffered from Leigh's disease, a rare neurometabolic disorder that affects the central nervous system. Early onset of the disease generally results in death by early childhood. *Aull*, 2010 WL 1814839, at *1.

*1-2. In exploring the estate's assertion, the court found that the measure of damages in Kentucky under a wrongful death claim had always centered on compensating for "the destruction of the decedent's 'power to labor.'" *Id.* at *3 (citing *W.L. Harper Co. v. Slusher*, 469 S.W.2d 955, 959 (Ky. 1971)). Using this rationale, the court decided that an individual does not "earn" disability benefits and therefore reliance upon those benefits was inappropriate "as proof of the destruction of his power to labor and earn money." *Id*. at. 3.

Although factually distinct from Johnson's circumstances, this Court finds that the breadth of the language in *Aull* controls this decision. Johnson clearly did not labor for or earn her Social Security disability benefits; instead she received these payments because she was unable "to engage in any substantial gainful activity by reason of [a] medically determinable physical . . . impairment." 42 U.S.C. §423(d)(1)(A) (defining disability under the Social Security Act). Consequently, the damages Johnson claims under KRS 411.130 cannot be measured by the Social Security disability benefits to which she was entitled. While this decision is at odds with past interpretations of Kentucky law[3], the previous rulings did not have a

---

[3] In *Meinhart v. Campbell*, Judge Heyburn of the Western District of Kentucky confronted the issue of whether disability benefits could be considered compensatory damages according to Kentucky's wrongful death statute. *Meinhart v. Campbell*, No. 3:07-cv-465, 2009 WL 4508579, at *1 (W.D. Ky. Dec. 1, 1999). In the absence of a controlling decision by a state appellate court on the subject, *Meinhart* decided that the Kentucky Supreme Court would interpret the measure of damages under KRS 411.130 to include Social Security disability benefits in determining damages. *Id.* at *3.

Even though the facts of *Meinhart* are more akin to those in the matter at hand, the court in *Aull* criticized the decision in its dicta, stating that the federal court in *Meinhart* had not correctly "considered the clear language of [*W.L. Harper Co. v. Slusher*, 469 S.W.2d 955, 959 (Ky. 1971)] that juxtaposes the decedent's 'power to labor' on the one hand and the 'earning of money' on the other hand in a cause-and-effect relationship." *Id.* at *4. As *Aull* directly confronted the reasoning in *Meinhart* and because this Court is persuaded by the interpretation of state law by Kentucky's own courts, the departure from Judge Heyburn's decision in *Meinhart* is appropriate.

recent decision from the Kentucky Court of Appeals on the issue. Having the benefit of *Aull*, this Court is persuaded that this decision is the best guide as to how the Kentucky judiciary would decide this question of state law. Although *Aull* is a Kentucky Court of Appeals case and is not cited as authority, its pronouncement is the best indication of how the Kentucky Supreme Court would interpret Kentucky law. For these reasons, the future Social Security disability payments to Johnson cannot be included in calculating Plaintiff's damages claim under KRS 411.130.

### II. Plaintiff is not Entitled to Recovery for Loss of Consortium

DVA argues that as Johnson was not a minor at the time of her death, Plaintiff is not entitled to a claim of loss of consortium under Kentucky law. Not only does Plaintiff's response to this motion for summary judgment fail to address this issue, but the law in Kentucky is clear on the subject. *See Smith v. Vilvarajah*, 57 S.W.3d 839, 844 (Ky. Ct. App. 2000) ("[W]e decline to extend the claim for loss of parental consortium to emancipated adult children such as the appellants."); *see also In re Air Crash at Lexington, Kentucky, August 27, 2006*, 556 F. Supp. 2d 665, 674 (E.D. Ky. 2008). For these reasons, DVA's motion is appropriate.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment with regard to the damages claim under KRS 411.130 is DENIED.

For the foregoing reasons, IT IS ALSO HEREBY ORDERED that Plaintiff's attempt to collect Johnson's future Social Security disability payments as an element of damages under KRS 411.130 is DENIED.

For the foregoing reasons, IT IS ALSO HEREBY ORDERED that Defendant's Motion

for Partial Summary Judgment with regard to Plaintiff's claims of Parental Consortium is GRANTED.